Ms. Menendez, we'll hear from you. Good morning, Your Honor. Thank you for the opportunity to present oral argument on behalf of Mr. Daniels. Your Honor, I'm going to focus my comments today on the first issue raised in the brief, although, of course, if the Court has questions about the second two, I'm prepared to answer them. The question before the Court raised in our first issue is simply whether Mr. Daniels' Miranda waiver and the subsequent confession were voluntarily given. The standards are well known to this Court. Obviously, a question of voluntariness involves an examination of the totality of the circumstances and things such as police overreaching as well as intoxication and sleeplessness, coercive environments, custody, and the length of interrogation. Those all play into the consideration. Our position here is that at a minimum, once it was revealed that there was substantial evidence that Mr. Daniels was intoxicated, even severely intoxicated, eight hours prior to his interrogation, the District Court should have reopened the evidentiary hearing on this matter to determine whether the subsequent waiver and confession were voluntary or not. Now, as I highlighted in the brief, and I don't think the government has any disagreement with, this Court's analysis of Miranda waiver and voluntariness in the context of intoxication are often somewhat blurred together. Although, frankly, they are separate questions. Your Honors also have to answer not only whether the Miranda waiver was voluntary, but whether it was knowing and intelligent. However, in this matter, we focused our conversation on voluntariness. I'll be candid. This Court doesn't often find circumstances of intoxication to give rise to a conclusion that a statement was involuntary. But I respectfully suggest that every case relied upon by the government in this matter, pointed to by their brief, as well as the ones that I found, are distinguishable on the facts. I think two of the most relied upon and critical cases in this area are the Casal case from 1990 and the Gaddy case from 2008. So I'll address those and highlight the ways in which Mr. Daniels' circumstances were more egregious and more severe. Before you do that, could you just clarify what you mean when you say when it became clear that he had been seriously intoxicated, or I forget how you put it. Certainly, Your Honor. You're referring to the evidence that appeared after the original ruling? Precisely, Your Honor. And remind us, what was that? And didn't the District Court look at that and resolve that? Remind us, what's that new evidence? Of course, Your Honor, of course. Videos? It was a squad car video. A squad car video. It was discovered by the government eve of trial. It was a Friday. I thought Judge Frank looked at that and he said, it doesn't appear to me that the man is incapable of communicating and so forth. Plus, it was eight hours earlier. You are exactly correct that Judge Frank both watched the squad car video from 1254 p.m. and re-listened to the interrogation the next morning approximately eight hours later. He did not say that he was not intoxicated in the nighttime squad car video. In fact, he suggested that he may well have been. That he may have been under the influence of something. Exactly, Your Honor. But that he was still, you know, he didn't qualify that? And I apologize if I am remembering incorrectly, Your Honor, but I thought that Judge Frank conceded that, while perhaps the night before he may have been under the influence of something, that by listening to the subsequent interrogation, it was clear that he was, in Judge Frank's opinion, able to waive voluntarily and make coherent decisions that he no longer appeared to be intoxicated. That was five hours after the arrest. Your Honor, it was approximately eight hours between the squad car video and the interrogation. Oh, okay. I thought it was five. But what's wrong with that? I wish it was five. Yeah. During the eight hours, however, Your Honor, he had been arrested, moved to booking, booked at sometime around four in the morning, put in some sort of holding cell, was removed the next morning for interrogation. So I am going to strongly argue that whatever intoxicated state he was in probably had not successfully abated thoroughly by the next morning. I don't know what good a remand would do, to be honest about it, because Judge Frank looked at everything and everything is there. There's no new evidence that you would have before him. Everything is really on the record that he looked at. Isn't that so? I respectfully disagree with that, Your Honor, although it is true in this case that he definitely both watched the video and listened to the interrogation. So probably more than in some cases. However, trial counsel and I was co-counsel at the trial did move to reopen the hearing, and we're going to try to explore additional issues, including what substances he was under the influence of the night before and how he had spent the intervening eight hours to create a more full record of whether he was able to voluntarily waive his rights. Well, this is a problem that I have. I watched the video, the squad car video, from the night before, and I saw and heard the appellant answer questions. He gave his street address. He gave his apartment number. He gave his zip code. He gave his cell phone number. He talked about what he was being arrested for. He asked the officer if he was being arrested on probable cause or straight charged, as he put it. And with that kind of responsiveness and communicating ability, isn't it really difficult for you to prevail on this argument that that bears on the voluntariness of his statement? Your Honor, I respectfully disagree, although you have accurately characterized some of the parts of that video. There are other parts, I think, that strongly suggest to the contrary. Not only does he attest to his own degree of intoxication, saying something like, man, I'm way too drunk for this, but during the video, he's actually in and out, dozing in and out. Despite the gravity of the situation that he finds himself in, he's not even able to stay awake while he's transported to booking or stay conscious. So while it may be that he can recite basic biographical facts, such as his address, I don't think that's tantamount to being able to make the serious decision of waiving his Miranda rights. Additionally, Your Honor, in this case, something that isn't present in the other intoxication cases, like Gaddy and Casal, the two I'd say most critical of this court's authority, are that in this case, we have clear evidence of law enforcement overreaching. Now, it is not a situation of physical coercion or threats or things like that, but repeatedly on this record, we have evidence that the law enforcement officers lied to Mr. Daniels about the strength of their case. There were two lies that are highlighted in our brief, the first one being that somebody had picked him out as the gun person, and the second being a suggestion that his DNA was found on the gun, neither of which were true. In fact, the government doesn't dispute that either were true. So those, combined with the intoxication, I suggest support at a minimum reexamining or a remand for further evidentiary hearing about whether that Miranda waiver was made voluntarily and whether the subsequent confession was made voluntarily. You and I get this, but I know through your brief, there's also a claim that the 17-year sentence was substantively unreasonable. What do you have to say on that, if anything? Your Honor, I mostly rested on my brief, but one of the things that really struck me in this case is that there was a mandatory minimum of 15 years, obviously incredibly onerous. Prior to this sentence, Mr. Daniels had spent nowhere near that much time in custody. Well, he's got a 15-year mandatory, and the sentence was below the guidelines. Indeed it was, Your Honor. I don't know how he could do anything about that. Well, Your Honor, this Court still has the authority to reverse a sentence as unreasonable, even if it is below the guidelines. And I would suggest that in this case, 17 years was simply greater than necessary, that 15 would have been more than enough, particularly in light of the fact that he had never spent a significant prison sentence. So twice, three times as much time as he'd ever been in prison before would still have been 10 years in this matter. I think the problem with the Armed Career Criminal Act is really a tough one. I don't think it's right, but it's there. I couldn't agree more, Your Honor. Thank you, and I'll reserve a moment for rebuttal, if I might. Thank you, Your Honors. Thank you. Mr. Kokanen, we'll hear from you. May it please the Court. Good morning, Your Honors. My name is John Kokanen, and I represent the United States. You probably recognize my name was not on the brief in this matter, but I was one of the attorneys, in fact, I guess the lead attorney at trial before the district court. Like Ms. Menendez, I'm going to focus my comments today on the suppression issue, so to speak, and I'll rest on the brief as to the sentencing issues. I don't know if this was covered. I know that Your Honors are well aware of the standard of review, but I think it bears highlighting that there are two standards of review that govern this issue today, and that's as to the question of suppression, it's reviewed whether the district court erred in refusing to suppress the statements. That's reviewed de novo. But an important caveat to that is that any factual findings that informed that decision are reviewed for clear error. And I think as Your Honor, Judge Colleton indicated, there were factual findings in this case, and I don't think that those have been challenged as clearly erroneous, nor could they be. The district court made factual findings as to the mental state of the defendant. The district court made factual findings as to whether any coercive activity was employed. As to the second part of the second standard review that governs this appeal is the abuse of discretion in refusing to reopen the rehearing when the squad car video was made available. The district court made factual findings at two junctures in this case. Following the suppression hearing, the district court made factual findings bearing on the voluntariness of the defendant's statement, and found that Sergeant Lambie, the sergeant who interviewed the defendant in custody, testified credibly that the defendant was alert, oriented, and responsive at the time of the interview. The district court adopted the R&R, agreed that there was no evidence suggesting that at the time of the interview, Mr. Daniel's mental state was diminished. Later, after the squad car video was obtained and provided to counsel and to the court, the district court watched it multiple times, re-listened to the audio recording, and made additional findings. The district court found, this is the morning of the second day of trial, before any evidence had come in, before opening statements had been made, the district court found that at the time of the squad car video, it was likely possible that the defendant was under the influence of something. But even then, the district court found he still was oriented to time and place, he didn't slur his speech, and he remembered specific details as he held brief conversations with the other individual who was in the car with him, Ms. Hudson. The district court then went again reviewing the audio recording of the statements and said that as to those statements made eight hours later, the district court again found that the defendant, based on having now the benefit of having watched the squad car video and heard the arguments of counsel, still found that during that interview that the defendant was interviewed, he accurately remembered the events from the night before, and he was essentially coherent and lucid under all the circumstances. Now none of these findings, either the ones that were made following the suppression hearing, or the ones that were made the morning of the second day of trial, none of them have been challenged as clearly erroneous, at least I didn't see that in Ms. Menendez's brief. And that being so, it seems difficult, those being the findings, for the district court to have reached any conclusion other than the one that it did, which is that the waiver was voluntary and knowingly made, and that the statements were voluntarily and knowingly made. A couple other points that I would like to note. Ms. Menendez just indicated to the court that law enforcement had overreached, but it sounds like Ms. Menendez is conceding that there wasn't any coercion, and I think that's an important point to note, because even if there was evidence that Mr. Daniels was intoxicated at the time of the interview, that alone is not enough. The Supreme Court long ago held in Colorado v. Connolly that there needs to be coercive police activity to render a confession involuntary, and there simply wasn't any coercion in this case. And the district court again made findings regarding that. The district court found that there was no threats or promises made. There was no... The officers weren't physically or orally aggressive to the defendant. I would disagree with Ms. Menendez about what she characterizes as lies that the sergeant employed during the interrogation, the first being the defendant's DNA. The sergeant, what she actually said during the interview is that, how are you going to explain your DNA being on the gun? It turns out she accurately predicted that his DNA was found on the gun. Granted, it was a mixture and he couldn't be excluded. She never specifically said that we already have your DNA, we've tested it, we've found it on the gun. That might be kind of a fine point. The second issue is the issue regarding individuals having picked out the defendant. Again, the government would submit that that wasn't a lie. Individuals had in fact picked out Mr. Daniels. Now, there hadn't been a photo lineup, but they had identified him by his description. This is the primary victim, Ariel Charleston. Identified him by his description and identified him by his relationship to the other individuals that were at the party. Based on that record, the district court properly found that there were no coercive conduct on the part of police. Absent coercion, there can't be a sense of involuntariness regardless of what Mr. Daniels' state of mind may have been due to the presence of any intoxicating substances. The final point that I would make, Your Honor, is that even if there were any errors committed with regard to refusing to suppress the statement or refusing to reopen the hearing, and as Judge Bright, I think, pointed out, that it doesn't seem to be a need to reopen the hearing. The district court had before it the audio recording. It had before it the squad car video. Sgt. Lambie, the individual who testified at the suppression hearing, the one who took the statement from Mr. Daniels, testified at trial. She could have been cross-examined about the defendant's mental state, and that whole issue of voluntariness and intoxication could have been something submitted to the jury, or the motion to suppress could have been renewed following Sgt. Lambie's testimony. Two other officers who were present on the night of the arrest, albeit not the ones who transported the defendant, testified at trial. They too could have been cross-examined by defense as to what Mr. Daniels' state of mind was when he was arrested. But getting back to the harmless error issue, Your Honors, I think it's a bit of a stretch. Mr. Daniels tries to make the argument that absent the incriminating statements, this was a weak case, and that's the exact opposite is true. You had the primary victim identify the defendant in court. She gave a description to the police. The defendant matched that description. We had ballistics evidence showing that the shell that had been fired at the scene of the shooting matched a gun that was found in the residence where Mr. Daniels was staying and was found that evening. And then additionally, you have the DNA evidence showing that although 92% of the population could be excluded as being potential contributors to the mixture, Mr. Daniels could not. At the end of the day, Your Honors, I think as Judge Bright indicated, Judge Frank did in fact give the relief that the defendant is asking for, which is it did reopen the suppression hearing, heard the arguments of counsel, considered the written submissions, reviewed the magistrate judge's file, listened to the audio recording, reviewed the squad car video on at least two occasions, made findings. Those findings are not clearly erroneous, and the defendant in effect got the remedy that they're asking for. Based on that, the government asked that this court affirm the decision of the District Court, and unless Your Honors have any questions, I would, those are the only remarks that I have to make. Thank you, Mr. Kokanen. We'll hear from Ms. Menendez in rebuttal. Thank you, Your Honor. Two brief points. First, I strongly disagree that our... I think that there's a disagreement about the appropriate standard of review. It is correct that Judge Frank's findings of fact deserve greater deference than the analysis of law. But in this case, I think that we can all equally well view the video as Your Honor has, read the transcript, and determine whether those facts, which are not contested, add up to coercion or voluntariness. And there is our dispute. We don't agree with Judge Frank when he says that there was, for instance, no coercion. We don't agree with Judge Frank when he says, for instance, that what's seen on the video leads to a finding of voluntariness. So we disagree that those things are properly characterized as factual conclusions. The final point I did not mean to suggest, and I apologize if I did, that there was... that we're conceding there was no coercion. I should have chosen a better word. We are conceding there's no physical coercion. This is not a case where Mr. Daniels was threatened, either verbally or physically, into giving this confession. But I do think that those untruths told by the law enforcement officer play into law enforcement overreaching, and so Colorado v. Connolly is satisfied. Thank you, Your Honors, for the opportunity. Thank you. Appreciate the arguments. And the case is submitted.